UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TYLER MCKEE o/b/o HPM, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | )   CAUSE NO. 1:24-cv-00129-SLC |
| | ) |
| COMMISSIONER OF SOCIAL SECURITY, *sued as Leland Dudek, Acting Commissioner of Social Security Administration*,[1] | ) |
| | ) |
|     Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tyler McKee on behalf of HPM ("Plaintiff") appeals to the district court from a final decision of the Commissioner of Social Security ("Commissioner") denying HPM's application under the Social Security Act (the "Act") for child's Supplemental Security Income ("SSI"). (ECF 1).[2] For the following reasons, the Commissioner's decision will be AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff applied for child's SSI in July 2022, alleging disability as of July 1, 2021. (ECF 12 Administrative Record ("AR") 209-14[3]). The application was denied initially and upon reconsideration. (AR 108, 124). In April 2023, the administrative law judge ("ALJ") conducted an administrative hearing, at which HPM and McKee, who were represented by counsel, and

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025, and thus, pursuant to Federal Rule of Civil Procedure 25(d), he is automatically substituted for Martin O'Malley as the defendant in this suit. *See Michael A. v. Dudek*, No. 1:22-cv-5422, 2025 WL 552464, at *1 n.1 (N.D. Ill. Feb. 19, 2025).

[2] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (ECF 9, 11).

[3] The AR page numbers cited herein correspond to the ECF-generated page numbers displayed at the top center of the screen when the AR is open in ECF, rather than the page numbers printed in the lower right corner of each page.

HPM's mother testified. (AR 59-92). On August 2, 2023, the ALJ rendered an unfavorable decision to Plaintiff, concluding that HPM was not disabled because he did not meet a listing or functionally equal a listing by having either "marked" limitations in two domains of childhood functioning or an "extreme" limitation in one domain of childhood functioning. (AR 41-53). The Appeals Council denied Plaintiff's request for review (AR 10-14), at which point the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481.

On March 26, 2024, Plaintiff filed a complaint in this Court appealing the Commissioner's final decision. (ECF 1). In his briefs, Plaintiff asserts that the ALJ failed to properly assess the severity of HPM's impairments, namely, by failing to consider: (1) HPM's third and fourth grade individualized education programs ("IEPs"), and (2) all of HPM's classroom accommodations. (ECF 14 at 4; ECF 19 at 2-8).

## II. STANDARD OF REVIEW

Section 405(g) of the Act grants this Court the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . , with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The Court's task is limited to determining whether the ALJ's factual findings are supported by substantial evidence, which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (citation omitted). The decision will be reversed "only if [it is] not supported by substantial evidence or if the Commissioner applied an erroneous legal standard." *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000) (citation omitted).

To determine if substantial evidence exists, the Court "review[s] the entire administrative

2

record, but do[es] not reweigh the evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Id.* (collecting cases). "Rather, if the findings of the Commissioner . . . are supported by substantial evidence, they are conclusive." *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003) (citation omitted). "In other words, so long as, in light of all the evidence, reasonable minds could differ concerning whether [the claimant] is disabled, we must affirm the ALJ's decision denying benefits." *Books v. Chater*, 91 F.3d 972, 978 (7th Cir. 1996).

### III. ANALYSIS

#### A. The Law

Under the Act, a claimant under the age of eighteen must establish that the claimant "has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 1382c(a)(3)(D).

The Commissioner evaluates disability claims for children pursuant to a three-step evaluation process, requiring consideration of the following issues, in sequence: "(1) is the child engaged in substantial gainful activity? (2) does the child have a medically determinable impairment that is severe? and, (3) do these impairments meet, medically equal, or . . . functionally equal one of a list of severe impairments set forth in the Listings [20 C.F.R. Part 416, Subpart P, Appendix 1]?" *Edwards ex rel. L.T. v. Colvin*, No. 12 C 7539, 2013 WL

3934228, at *1 (N.D. Ill. July 30, 2013) (citing 20 C.F.R. §§ 416.924(b)-(d)); *see also Mara S. ex rel. C.S. v. Kijakazi*, No. 19-cv-8015, 2022 WL 4329033, at *1 (N.D. Ill. Sept. 19, 2022). An affirmative answer at step one, or a negative answer at steps two or three, ends the inquiry and leads to a determination that the child is not disabled. *See Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1; *see also Edwards ex rel. L.T.*, 2013 WL 3934228, at *1.

The question of whether the child's impairment "functionally equals" a listing is unique to child disability claims. *Edwards ex rel. L.T.*, 2013 WL 3934228, at *1 (citation omitted). The ALJ "will look at how appropriately, effectively, and independently [the child] perform[s] [the child's] activities compared to the performance of other children [the same age] who do not have impairments." 20 C.F.R. § 416.926a(b). To find that an impairment functionally equals a listing, the ALJ must consider the impairment's severity in six age-appropriate domains: "(1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being." *Mara S. ex rel. C.S.*, 2022 WL 4329033, at *1 (citing 20 C.F.R. § 416.926a(b)). If the ALJ finds a "marked" limitation in at least two of the domains or an "extreme" limitation in one domain, the child functionally equals a listing. *Id.* (citing 20 C.F.R. § 416.926a(d)). A marked limitation in a domain means the child's "impairment(s) interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation is "more than moderate" but "less than extreme." *Id.* An extreme limitation in a domain means the child's "impairment(s) interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An extreme limitation is "more than marked" and represents the rating given

4

"to the worst limitations." *Id.*

The burden of proof lies with the applicant at each step of the process. *R.J. ex rel. Taylor v. Colvin*, No. 1:11-cv-01001-SEB-DKL, 2014 WL 1328166, at *2 (S.D. Ind. Mar. 28, 2014). "If a child's impairments pass all three steps, and satisfies the duration requirement, then [he] is determined to be disabled." *Id.*

### B. The Commissioner's Final Decision

In the Commissioner's final decision, the ALJ noted at the outset that HPM was a "school-age child" both when the application was filed in July 2021 and when the ALJ issued her decision in August 2023. (AR 43). At step one of the three-step analysis, the ALJ found that HPM had not engaged in substantial gainful activity since the application date. (*Id.*). At step two, the ALJ found that HPM had the following severe impairments: asthma, chronic fatigue, history of developmental delays, speech/articulation impairment, language impairment, history of receptive/expressive language delays, specific learning disability, attention deficit hyperactivity disorder, oppositional behavior, and dyssomnia sleep maintenance. (*Id.*). At step three, the ALJ concluded that HPM did not have an impairment or combination of impairments that meets, medically equals, or functionally equals the severity of a listing under 20 C.F.R. Part 416, Subpart P, Appendix 1. (AR 44-45, 53). Therefore, Plaintiff's application for child's SSI was denied. (AR 53).

### C. The ALJ's Consideration of HPM's Impairments
### Is Supported by Substantial Evidence

Plaintiff argues that the ALJ failed to properly assess the severity of HPM's impairments, necessitating a remand of this case. (ECF 14 at 9). Specifically, Plaintiff contends that the ALJ's analysis is flawed because the ALJ: (1) failed to adequately consider two of the three IEPs of

5

record; and (2) failed to acknowledge all of HPM's classroom accommodations. (*See* ECF 14 at 9-14; ECF 19 at 2-8). For the following reasons, neither of Plaintiff's arguments warrant a remand of this case.

   1. <u>IEPs</u>

HPM has an IEP of record for each second grade, 2021-2022 (AR 306-21); third grade, 2022-23 (AR 486-510); and fourth grade, 2023-2024 (AR 697-711). Plaintiff acknowledges that the ALJ adequately considered the second grade IEP but contends the ALJ "fail[ed] to confront critical evidence from the later IEPs . . . ." (ECF 19 at 3).

Specifically, Plaintiff points to the fourth grade IEP, which reflects that HPM received a failing grade in both language arts and science and on the IREAD-3 state standardized test, requiring a good-cause exemption to move to the next grade level. (*Id.*; *see* AR 698, 701). Plaintiff argues that the ALJ erred by failing to address this evidence, which he contends "is very strong evidence of [HPM's] most current functionality and shows . . . regression compared to testing two years prior." (ECF 19 at 3-4). Plaintiff also asserts that the ALJ's reliance on the opinions of Kari Kennedy, Psy.D., and Maura Clark, Ph.D., state agency psychologists who reviewed HPM's records in November 2021 and March 2022, respectively (AR 96-97, 103-05), cannot bridge the gap because these doctors did not see the third and fourth grade IEPs. (ECF 19 at 2-3). As such, Plaintiff asserts that the ALJ's reliance on testing from two years before the fourth grade IEP "does little to overcome this strong evidence favorable to the Plaintiff which neither the ALJ nor the reviewing doctors addressed." (*Id.* at 4); *see generally Giles ex rel. Giles v. Astrue*, 483 F.3d 483, 488 (7th Cir. 2007) ("We require an explanation of why strong evidence favorable to the plaintiff is overcome by the evidence on which an ALJ relies." (citation

6

omitted)).

Contrary to Plaintiff's assertion, the ALJ's decision reflects that the ALJ *did* consider all three IEPs of record. The ALJ cited the second-grade IEP when noting that HPM "made gains in reading and gave full effort, but he still remained behind grade level." (AR 48 (citing AR 307); *see also* AR 50). The ALJ cited the third-grade IEP when stating that HPM's speech limitations and speech therapy were noted in the record, but also that HPM "continue[s] to grow in his ability to produce clear and intelligible speech" (AR 47 (citing AR 489)), and was described as "having good self-control and was motivated to complete his work early — he enjoyed school." (AR 48 (citing AR 500)). And the ALJ cited the fourth-grade IEP when observing that HPM participated in special education and small groups (AR 48 (citing AR 706); *see also* AR 50), and that HPM's "[g]rades show he was failing language arts, but this was apparently due to not completing homework" (AR 47 (citing AR 709)).

The ALJ also cited a Multi-Disciplinary Psychoeducational Evaluation Report from September 2021 when noting that HPM's "memory skills were below average, his visual processing was low, and auditory processing skills were very low" (*id.* at 47-48 (citing AR 526); *see also* AR 742), and that HPM's general intellectual ability was rated as 66 (AR 48 (citing AR 742); *see also* AR 50). Additionally, the ALJ relied on psychological evaluations from January 2018 and November 2021 when noting that HPM's IQ was between 75 and 77. (AR 48 (citing AR 324, 453); *see also* AR 50). The ALJ also cited a speech and language evaluation from October 2021 when stating that HPM's "speech was 80% intelligible to a familiar listener and 85% intelligible to an unfamiliar listener." (AR 48 (citing AR 436); AR 50). Thus, although the ALJ did not cite to every piece of evidence, she did not "ignore an entire line of evidence that

7

supported a finding of disability . . . ." *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (citation omitted).

Plaintiff nevertheless argues that the failing grades and test scores in the fourth-grade IEP establish that "the gap between [HPM] and [his] non-disabled peers is widening," given that the two preceding IEPs do not include any failing grades. (ECF 14 at 13). But as the Commissioner notes, the second and third-grade IEPs do not include *any* letter grades. (ECF 18 at 5; *see* AR 306-21, 486-505). Consequently, the letter grades included for the first time in the fourth-grade IEP are not necessarily evidence that HPM's performance worsened. Notably, the educators did not change any of HPM's educational accommodations—small groups, preferential seating, scratch paper, extra time, a "Hundreds Chart", and directions and content read aloud—from second grade to fourth grade, or indicate that HPM was regressing in his academics. (*See* AR 700-01). While some goals were adjusted in the fourth-grade IEP, Plaintiff's assertion that the later IEPs reflect a "stark difference in [HPM's] functionality over the course of two years" is simply not supported by the record. (ECF 19 at 4). For example, the fourth-grade IEP reflects that HPM was still pursuing a high school diploma; working hard on speech, language, and reading comprehension; showing improved math skills; and needing to spend time at home on language arts assignments. (*See* AR 702-09).

Plaintiff also contends that the ALJ made an "unfounded assessment" when stating that HPM "was failing language arts, but this was apparently due to not completing homework." (ECF 14 at 11-12; *see* AR 709)). In doing so, Plaintiff points to a statement in the fourth-grade IEP that "[HPM's] low scores across his academics, low memory skills, and overall low processing skill indicate that [he] demonstrates a limited strength, vitality, or alertness . . . that

8

results in limited alertness with respect to the educational environment *that is due to his ADHD diagnosis*." (AR 700 (emphasis added); *see* ECF 14 at 12). Plaintiff asserts that "[n]o[]where in the IEP does any member of the school attribute [HPM's] struggles in any class with the failure to turn in homework." (ECF 14 at 12).

But the ALJ did not say that HPM "fail[ed] to turn in homework" assignments. Rather, the ALJ wrote that HPM was "not completing homework" (AR 47), which is consistent with the fourth-grade IEP's indication that HPM was not studying for spelling or vocabulary tests and was not doing any schoolwork at home in the evenings:

> Ms. Davis discussed [HPM's] failing Language Arts grades . . . . [HPM] admits that he doesn't study for spelling tests or vocabulary tests. Mom shared that [HPM] doesn't come home with anything for homework. She said he reports that he "already did it at school." Ms. Davis suggested mom get on Mr. Butz's Google Classroom to look at assignments, as all students in the class have daily studying they could be doing for a brief period of time at home each night.

(AR 709; *see also* AR 699 ("[Mom] is concerned about [HPM's] lack of desire to work at home, as she knows he needs to improve his math and reading."), 708 ("Mom would like to see [HPM] reading more. . . . Mom is concerned that [HPM] doesn't read at home. He rebels when asked to read. Ms. Davis suggested reading together at home . . . . [and] studying for spelling on a nightly basis.")). Certainly, the ALJ' statement directly linking HPM's failing grade in language arts with his failure to complete homework was "a bit harsh" and overly simplistic; nevertheless, the ALJ's observation is not without at least some basis in the record. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) (affirming the ALJ's conclusion about the claimant's credibility though "a bit harsh," where the ALJ's findings were not "patently wrong or divorced from the facts contained in the record" (internal citation and quotation marks omitted)).

In any event, "[i]t is not enough to criticize the ALJ's decision . . . . [Plaintiff] must point to

9

evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). "[T]he primary responsibility for producing medical evidence demonstrating the severity of impairments remains with the claimant." *Flener ex rel. Flener v. Barnhart*, 361 F.3d 442, 448 (7th Cir. 2004) (citing 20 C.F.R. § 416.912(c)). Here, Plaintiff fails to cite any medical source opinion assigning HPM greater limitations in the six functional domains than those assigned by the ALJ. *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004) ("It is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." (citations omitted)). Moreover, Plaintiff does not even bother to specify which of the six domains he believes the ALJ improperly evaluated, or how the evidence he contends the ALJ ignored supports "marked" or "extreme" limitations in any functional area.

In contrast, the ALJ's finding of no limitation in the domain of ability to care for self and less-than-marked limitations in the remaining five domains is adequately supported by the opinions of Dr. Kennedy and Dr. Clark. These two doctors opined that HPM had no limitation in the domains of moving about and manipulating objects, caring for self, and health and physical well being, and less-than-marked limitations in the three remaining domains. (AR 96-97, 103-05). "It is appropriate for an ALJ to rely on the opinions of physicians and psychologists who are also experts in social security disability evaluation." *Flener ex rel. Flener*, 361 F.3d at 447 (citation omitted); *see, e.g.*, *J.H.R. ex rel. Radford v. Astrue*, No. 1:07-cv-1584-DFH-DML, 2009 WL 692211, at *7 (S.D. Ind. Mar. 13, 2009) (affirming the ALJ's finding that the claimant had less-than-marked limitations in acquiring and using information notwithstanding that the claimant was receiving special education and failing his classes).

And while Plaintiff argues the ALJ should have sought another medical opinion because Dr. Kennedy and Dr. Clark did not review HPM's third and fourth grade IEPs, that argument is unpersuasive. (*See* ECF 19 at 5). "An ALJ is not required to consult a medical expert about every piece of medical evidence submitted by the claimant. Generally, claimants continue to receive treatment up to and even after the date of the administrative hearing, which occurs long after the state agency physicians reach their opinions." *Jandt v. Saul*, No. 18-C-737, 2019 WL 4464763, at *3 (E.D. Wis. Sept. 18, 2019). "[B]ecause it is always possible to identify one more test or examination an ALJ might have sought, the ALJ's reasoned judgment of how much evidence to gather should generally be respected." *Flener ex rel. Flener*, 361 F.3d at 448 (citation omitted). "If an ALJ were required to update the record any time a claimant continued to receive treatment, a case might never end." *Keys v. Berryhill*, 679 F. A'ppx 477, 481 (7th Cir. 2017) (citation omitted).

In sum, contrary to Plaintiff's assertion, the ALJ did consider HPM's third and fourth-grade IEPs. *See Jandt*, 2019 WL 4464763, at *4 ("[T]he ALJ . . . discussed the medical evidence in the record and concluded that the clinical evidence supported the state agency physicians' opinions."). Notably, these later IEPs do not reflect a regression in academic ability or a change in classroom accommodations. (*See* AR 486-510, 697-711). Further, Plaintiff failed to produce any medical source opinion assigning HPM "marked" or "extreme" limitations in any domain, leaving Dr. Kennedy's and Dr. Clark's opinions uncontradicted. Consequently, the ALJ's consideration of the IEPs and reliance on Dr. Kennedy's and Dr. Clark's opinions are not grounds for reversal. *See Tutwiler v. Kijakazi*, 87 F.4th 853, 860 (7th Cir. 2023) ("The lack of an opposing medical opinion makes it difficult for us to find that the ALJ misjudged the evidence so

significantly as to warrant reversal."); *see also Jandt*, 2019 WL 4464763, at *3 ("Without a medical opinion from her physician supporting her claim, the ALJ did not err in relying on the state-agency's uncontradicted opinions . . . ." (citations omitted)).

2. <u>Classroom Accommodations</u>

Plaintiff also argues that the ALJ erred by failing to acknowledge several of HPM's classroom accommodations, thereby downplaying the severity of his impairments. (ECF 14 at 9). This argument, too, is unavailing.

All three IEPs of record contain the same six accommodations:

> Student works best in a small group[;] Student is provided preferential seating[;] Student may use scratch/blank paper (including lined or graph paper)[;] Student is provided with extra time[;] Student provided a Hundreds Chart for mathematics classwork, homework and assessment[;] Directions and content read aloud to the student (text to speech).

(AR 308, 492, 700-01). The IEPs describe "additional accommodations and/or guidance" as frequent check points for understanding, differentiated tests, extended time, tests read to him as deemed necessary, shortened assignments, simple directions, alphabet line, number line, manipulatives, and oral responses. (*See* AR 308, 492, 701).[4] All three IEPs further reflect that HPM participated in speech therapy and used a resource room for academic support when needed. (AR 314, 497, 705-06).

It is true that the ALJ mentioned some, but not all, of HPM's classroom accommodations in her decision. Specifically, the ALJ discussed that HPM had an IEP (AR 49, 53), participated in speech therapy (AR 47), was in special education and worked in small groups (AR 48, 50), used

---

[4] Although Plaintiff contends oral responses "were moved up to an additional accommodation" in the fourth-grade IEP (ECF 14 at 10), "oral responses" were included in all three IEPs as additional accommodations or guidance. (*See* AR 308, 492, 701).

the resource room at times (AR 44), and was in the regular classroom eighty percent of the time (AR 48). Plaintiff argues that the ALJ's minimal discussion of HPM's accommodations "falls woefully short of analyzing 'the kind, extent, and frequency of help or adaptations the child needs[,]'" as instructed by Social Security Ruling 09-1p. (ECF 14 at 10 (quoting SSR 09-1p, 2009 WL 396031, at *3 (Feb. 17, 2009))).

"But an ALJ need not mention every piece of evidence, so long [as she] builds a logical bridge from the evidence to [her] conclusion" that the claimant is not disabled. *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citation omitted); *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) ("Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." (citations omitted)). Here, as explained *supra*, it is clear from the ALJ's decision that the ALJ considered each of the three IEPs of record (AR 47-48 (citing AR 307, 489, 500, 706, 709)), which all set forth the same classroom accommodations (AR 308, 492, 700-01). The ALJ also discussed other "help" that HPM purportedly received, SSR 09-1p, 2009 WL 396031, at *3, such as HPM's parents' testimony that HPM needed help with dressing and bathing (AR 44-45) and getting drinks (AR 51).

In doing so, the ALJ fulfilled her duty to minimally articulate her consideration of the evidence and build an accurate and logical bridge from the evidence to her conclusion that HPM was not disabled. *See Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) ("If a sketchy opinion assures us that the ALJ considered the important evidence, and the opinion enables us to trace the path of the ALJ's reasoning, the ALJ has done enough."). "By 'minimal level of articulation' we mean just that—enough to show that the ALJ considered the evidence the law

requires [her] to consider. A more extensive requirement sacrifices on the altar of perfectionism the claims of other people stuck in the queue." *Id.* at 288. The Court cannot "substitute its judgment for that of the Commissioner by reconsidering facts [or] reweighing evidence . . . ." *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998) (collecting cases). Therefore, because the ALJ's decision is supported by substantial evidence and adequately articulated, the Commissioner's final decision will be affirmed.

### IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision is AFFIRMED. The Clerk is DIRECTED to enter a judgment in favor of the Commissioner and against Plaintiff.

SO ORDERED.

Entered this 11th day of March 2025.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge